UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JUDY F. PERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:06-CV-00054 |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Judy Perry appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying Perry's application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB").[1] (*See* Docket # 1.) Perry alleges two errors in the Commissioner's final decision: (1) that the administrative law judge ("ALJ") erred by relying upon a medical expert opinion that was "defective," resulting in a decision that was not supported by substantial evidence; and (2) that the ALJ erred by failing to minimally articulate her consideration of the evidence and her reasoning in denying Perry's DIB application. (Br. in Supp. of Pl.'s Compl. to Review Decision of Commissioner of Social Security Administration ("Opening Br.") at 7-10.)

For the reasons set forth herein, the Commissioner's decision will be AFFIRMED.

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

## I.  PROCEDURAL HISTORY

Perry was last insured for DIB on March 31, 1999 (referred to herein as the "DLI"), which is significant to this appeal. (Tr. 72.)  She applied for DIB on August 20, 2002, alleging that she became disabled as of March 12, 1997.[2] (Tr. 80-82.)  The Commissioner denied her application initially and upon reconsideration, and Perry requested an administrative hearing. (Tr. 17-19.)  On June 23, 2004, ALJ Yvonne Stam conducted a hearing at which Perry, who was represented by counsel, her daughter, and a vocational expert testified. (Tr. 382-95.)  On October 12, 2004, the ALJ rendered an unfavorable decision to Perry, concluding that she was not disabled prior to her DLI because she could perform a significant number of jobs in the national economy despite the limitations caused by her impairments. (Tr. 39-45.)  Perry promptly requested a review of the ALJ's decision by the Appeals Council. (Tr. 33-35.)

On April 15, 2005, the Appeals Council remanded Perry's claim for further consideration of her heart condition and triple bypass surgery that occurred in January 2000. (Tr. 31-32.)  On August 16, 2005, ALJ Stam conducted a second hearing at which Perry's daughter and a medical expert testified. (Tr. 396-405.)  On October 7, 2005, the ALJ rendered an unfavorable decision to Perry, again concluding that she was not disabled prior to her DLI because she could perform a significant number of jobs in the national economy despite the limitations caused by her impairments. (Tr. 8-16.)  The Appeals Council denied Perry's request for review, making the

---

[2] This is Perry's second application for DIB, as she filed her first DIB application on September 21, 1998, alleging the same onset date of March 12, 1997. (Tr. 20.)  Her claim was denied initially on November 13, 1998, and she did not appeal that determination, making it a final and binding adjudication. (Tr. 20, 68-71); *see* 20 C.F.R. § 404.921.  Accordingly, the Commissioner argues, and Perry does not dispute, that the relevant period in this case is November 13, 1998, to March 31, 1999, the date her DIB insured status expired. (Statement of the Case at 3 n.2); *see* SSR 74-8(c), SSR 69-38(c).

ALJ's decision the final decision of the Commissioner. (Tr. 4-6.)

Accordingly, Perry filed a complaint with this Court on February 24, 2006, seeking relief from the Commissioner's final decision. (Docket # 1.) This appeal became ripe for the Court's review as of October 2, 2006. (*See* Docket # 11-16.)

## II.  FACTUAL BACKGROUND[3]

### *1. Background and Daily Activities*

At the time of her DLI, Perry was forty-eight years old, had a high school education, and had past relevant work experience as a cashier/gas station attendant. (Tr. 80, 100, 105, 136, 391.) Perry alleged in her DIB application that she became disabled as of March 12, 1997, due to diabetes, high blood pressure, poor circulation, and kidney failure.[4] (Tr. 99.)

At her first hearing, Perry testified that she lives with her husband, whom she has been married to for thirty-five years.[5] (Tr. 385.) She stated that she quit her second-shift job as a cashier/gas station attendant in March 1997 because she was "weak" and "real sick," reporting that her daughter occasionally had to come pick her up from work because she was vomiting. (Tr. 385, 388.) She reported that her health got "[a] lot worse" in the five years since her DLI, explaining that she now receives dialysis three times per week, takes twenty-two pills a day, is "a lot weaker," and "just stay[s] in bed." (Tr. 386.)

---

[3] The administrative record in this case is voluminous (407 pages), and the parties' disputes involve only small portions of it.  Therefore, in the interest of brevity, this opinion recounts only the portions of the record necessary to the decision.

[4] In her DIB application, Perry explained that she had been diagnosed with diabetes twenty-six years earlier. (Tr. 99.)

[5] At the beginning of the hearing, the ALJ instructed the parties to focus on Perry's DLI, rather than Perry's current status. (Tr. 385.)

3

Perry's daughter, Jennifer Cobin, also testified at both hearings on Perry's behalf. (Tr. 387-90, 403-04.) Cobin explained that she lives five minutes from her parents and checks on them every morning and evening. (Tr. 388-89.) She stated that after her mother quit working in 1997, she did "nothing" during the day, either sitting in a chair or staying in bed. (Tr. 391.) At times she would check on her in the evening and would find her "in bed still in her night clothes." (Tr. 391.) She did state that at times Perry would attempt to perform household chores, explaining that she "would see [Perry] trying, but she couldn't get it accomplished, she couldn't get everything done." (Tr. 389, 392.) For example, she reported that Perry would try to wash dishes, but that she would need to sit down after washing only a few plates or silverware. (Tr. 389.) As a result, Cobin testified that she performed most of her parents' household chores, explaining that as of Perry's DLI, "it was getting to a point . . . where [she did] everything for them."[6] (Tr. 389, 392.)

## 2. *Summary of Pre-DLI Medical History*

In May 1995, Perry went to the emergency room complaining of right lower quadrant pain, but upon testing there was no evidence of a kidney stone. (Tr. 147-49.)

In August 1996, Perry underwent laparoscopic gallbladder surgery and an abdominal hysterectomy after experiencing vomiting "on and off," abdominal pain, and heavy menstrual flow for the past three years. (Tr. 150-63.) Prior to surgery, Perry underwent an EKG, which indicated "no change" since 1994, but suggested the possibility of an old infarction. (Tr. 163.)

On September 30, 1998, Perry visited H. Stephen Beyer, M.D., an endocrinologist, at the

---

[6] Curiously, this testimony is inconsistent with Dr. Meek's progress note dated December 18, 1998, which indicated that Perry was babysitting five of her grandchildren while her husband and daughter were each in different hospitals. (Tr. 188.)

4

referral of her family practitioner for a consultation concerning her diabetes. (Tr. 166.) Upon clinical examination, Dr. Beyer observed that Perry had some scaling skin on her lower legs, but no ulcers or foot lesions. (Tr. 166-67.) Dr. Beyer described Perry as "mildly overweight" and advised her on controlling her blood sugar levels through diet, exercise, and medication. (Tr. 166.) He ordered various laboratory tests; recommended that Perry see an ophthalmologist and undergo a cardiac evaluation, possibly including a stress test; and scheduled her for a follow up appointment with him in thirty days. (Tr. 166.)

At the consultation, Dr. Beyer also informed Perry and her husband that he "does not enter into determinations of disability, unless it is obvious that there is disability such as amputated limbs or blindness or severe heart disease." (Tr. 166.) Apparently, this was not the type of consultation that Perry and her husband were seeking, as Perry's husband called Dr. Beyer's office later that same day questioning how Dr. Beyer could "look at a patient once and decide she is not disabled." (Tr. 165-66.) He then informed the office that they would probably cancel Perry's appointment scheduled with Dr. Beyer for the following month. (Tr. 165-66.) True to their word, Perry and her husband never returned to Dr. Beyer.

On October 8, 1998, David Meeks, M.D., Perry's family practitioner, completed a medical questionnaire about Perry's condition, identifying her diagnoses as hypertension, diabetes, and seasonal allergies. (Tr. 190.) He reported that she had not experienced chest discomfort or end organ damage to the heart, kidneys, or peripheral vascular system as a result of her diabetes. (Tr. 191.) He stated that Perry had no complaints of numbness and that her gait and station were normal, although he did observe some limitation of movement due to her weight. (Tr. 192.)

5

On November 5, 1998, Perry visited Earl Braunlin, M.D., an ophthalmologist. (Tr. 168-71.)  Upon clinical examination, Dr. Braunlin determined that Perry had normal 20/20 vision in both eyes.[7] (Tr. 169.)

On November 11, 1998, F. Montoya, M.D., reviewed Perry's record on behalf of the Social Security Administration. (Tr. 172-79.)  He concluded that Perry could lift fifty pounds occasionally, lift twenty-five pounds frequently, stand and/or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and perform unlimited pushing and pulling. (Tr. 172-79.)  He assigned her no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 172-79.)

*3.  Summary of Post-DLI Medical History*

In January 2000, Perry underwent cardiac bypass surgery. (Tr. 296.)  Six months later, Christopher Zee-Cheng, M.D., Perry's cardiac specialist, reported that "aside from occasional chest soreness from her surgery she is doing great," even spending time mowing grass and working in her yard. (Tr. 295.)  He further noted that Perry "is following her diet and is staying active." (Tr. 295.)

On November 4, 2002, W. Bastnagel, M.D., reviewed Perry's medical record on behalf of the Social Security Administration. (Tr. 276-83.)  He concluded that Perry could lift fifty pounds occasionally, lift twenty-five pounds frequently, stand and/or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and perform unlimited pushing and pulling. (Tr. 276-83.)  He assigned her no postural, manipulative, visual,

---

[7] Curiously, the results of Perry's evaluation by Dr. Braunlin are inconsistent with Perry's representation on her first DIB application in 1998 that her "eyes are getting real bad." (Tr. 91.)

communicative, or environmental limitations. (Tr. 276-83.)

However, in December 2002, Perry began to experience increasing amounts of shortness of breath. (Tr. 309.)  She was then diagnosed with congestive heart failure and underwent an arteriovenous graft placement. (Tr. 268-75, 309-11.)  Also in December 2002, Perry began receiving kidney dialysis three times per week for diabetic nephropathy. (Tr. 268-75, 309-11, 288-92, 323-25, 338-39.)

In April 2003, Perry visited the emergency room for nausea, vomiting, and uncontrolled hypertension. (Tr. 352-55, 374-78.)

In February 2004, Perry had surgery to implant a stent in her circumflex artery due to high grade stenosis. (Tr. 344-45, 372-73.)

*4. Testimony of Dr. Cox, Medical Expert*

At the request of the Social Security Administration, Frank Cox, M.D., reviewed Perry's medical records and testified as a medical expert at the second hearing. (Tr. 400-02, 405-06.) Dr. Cox opined after reviewing the record that "it was quite clear that [Perry] meets the listings . . . and the only question was *when*." (Tr. 401 (emphasis added).)

Dr. Cox then explained that the medical evidence in Perry's record before 2000 was "pretty sketchy." (Tr. 401.)  Dr. Cox noted that the most comprehensive work-up was performed by Dr. Beyer in September 1998, though he did not address her cardiac status. (Tr. 401.)  He did, however, find Dr. Meek's opinion of March 1999 significant, which stated that Perry had experienced no chest discomfort, had no evidence of end organ damage, no vision problems, no complaints of numbness, and had a normal gait and station. (Tr. 406.)  He also observed what precipitated Perry's bypass surgery was not really covered in the record. (Tr. 401.)  He found it

7

relevant, however, that in the time period following her bypass surgery, she did "great" other than experiencing some chest soreness, even mowing grass and working in her yard. (Tr. 401.) After considering all of the relevant evidence of record, Dr. Cox concluded that an onset date of January 2002 would be appropriate. (Tr. 401.)

Perry's attorney then asked the ALJ to direct Dr. Cox's attention to a progress note of one of Perry's family practitioners, which indicated that Perry complained of occasional chest pain in March 1999. (Tr. 405.)  Dr. Cox reiterated that this bit of medical evidence did not change his opinion of Perry's onset date, as that same progress note *also* reflected that Perry was "feeling ok." (Tr. 186.)  At Perry's attorney's request, the ALJ then asked Dr. Cox whether Cobin's testimony that Perry was experiencing occasional vomiting in 1999 might change his opinion. (Tr. 405.)  Dr. Cox stated that it would not, as no objective evidence corroborated this testimony of nausea and vomiting in 1999 and the record showed that a gastrointestinal evaluation was not performed until 2003. (Tr. 406.)  He explained that if Perry was experiencing significant nausea and vomiting in 1999, she would likely have been admitted to the hospital or undergone a gastrointestinal evaluation at that time, rather than four years later. (Tr. 406.)

### 5.  *The ALJ's Decision*

On October 7, 2005, the ALJ rendered her opinion. (Tr. 8-16.)  She found at step one of the five-step analysis that Perry had not engaged in substantial gainful activity since her alleged onset date, and at step two that she had severe impairments with respect to her diabetes mellitus and poor circulation. (Tr. 13.)  However, at step three, she determined that Perry's impairments were not severe enough to meet a listing as of her DLI. (Tr. 13.)  Before proceeding to step four, the ALJ determined that as of her DLI Perry had the residual functional capacity ("RFC") to lift

8

and carry up to ten pounds, sit at least six hours in an eight-hour workday, and stand and walk in combination at least two hours in an eight-hour workday.[8] (Tr. 13.)

Based on this RFC, the ALJ concluded at step four that Perry could not perform any of her past relevant work and that she had no transferable skills. (Tr. 14.) The ALJ proceeded to step five where she heard vocational expert testimony and determined that, considering Perry's age, education, and experience, Perry could perform a significant number of jobs in the national economy as of her DLI, including electrical accessory assembler, addresser, and surveillance system monitor. (Tr. 15.) Therefore, Perry's claim for DIB was denied. (Tr. 15-16.)

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). The ALJ's decision must be sustained if it is supported by substantial evidence. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Id.*

Under this standard, the Court reviews the entire administrative record, but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Id.*

---

[8] This RFC is equivalent to the description of sedentary work. *See* SSR 96-9p.

## IV.  THE LAW

To be considered disabled under the Act, a claimant must establish that she is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1); 42 U.S.C. § 423(d)(1)(A).  The impairment must be severe, causing the claimant to be unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 405.1505-1511.

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[9] 20 C.F.R. § 404.1520; *see also Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.*  The burden of proof lies with the claimant on every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

---

[9] Before performing steps four and five, the ALJ must determine the claimant's RFC, or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

10

## V.  ANALYSIS

Perry contends that the ALJ erred by: (1) relying upon the "defective" opinion of Dr. Cox, the medical expert secured by the Social Security Administration; and (2) failing to minimally articulate her consideration of the evidence and her reasoning in denying her DIB application. (Opening Br. at 7-10.)  Though each argument will be discussed in turn, neither is ultimately successful.

### A.  *The ALJ Did Not Error By Relying Upon the Opinion of  Dr. Cox*

Perry asserts that the ALJ erred in relying on the "defective" opinion of Dr. Cox, the non-examining medical expert, in determining that she was not disabled as of her DLI.  Contrary to Perry's assertion, Dr. Cox's opinion constituted substantial evidence upon which the ALJ was entitled to rely.

"The ALJ must give substantial weight to the medical evidence and opinions submitted, unless specific, legitimate reasons constituting good cause are shown for rejecting it. *Knight v. Chater*, 55 F.3d 309, 313-14 (7th Cir. 1995) (citing 20 C.F.R. §§ 404.1527 (c), (d)); *see also Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir. 1993).  "Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence."[10] *Knight*, 55 F.3d at 314 (citing

---

[10] More specifically, 20 C.F.R. § 404.1527(c) provides:

After we review all of the evidence relevant to your claim, including medical opinions, we will make findings about what the evidence shows.

 (1) If all of the evidence we receive, including all medical opinion(s), is consistent, and there is sufficient evidence for us to decide whether you are disabled, we will make our determination or decision based upon that evidence.

 (2) If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all of the evidence and see whether we can decide whether you are disabled based on the evidence we have. . . .

11

20 C.F.R. § 404.1527(c)).

Here, Perry contends that Dr. Cox's opinion was "defective" for several reasons. (Opening Br. at 9.)  First, Perry asserts that Dr. Cox's conclusion that the pre-DLI medical evidence is "pretty sketchy" is inconsistent with the record, which she contends "is extensive and reveals a history of worsening diabetes, worsening hypertension, abnormal heart function and a likely previous heart attack." (Opening Br. at 9.)  Second, Perry contends that Dr. Cox "ignored the most significant fact of Dr. Beyer's examination, namely that Dr. Beyer believed the Plaintiff's medical condition was serious enough to warrant a cardiology evaluation and stress test." (Opening Br. at 9-10.)  Finally, Perry argues that "there is no indication that [Dr. Cox] considered any of [Perry's] testimony." (Opening Br. at 10.)

None of Perry's arguments are ultimately persuasive.  As to Perry's first contention, Dr. Cox acknowledged that at the time of the hearing in 2005 Perry was disabled, but concluded that based on the medical evidence of record her functional decline occurred *after* her DLI in 1999. Dr. Cox's opinion is consistent with the contemporaneous medical opinions of record, including that of Perry's own family practitioner, Dr. Meeks, who completed a medical questionnaire in October 1998 assigning Perry *no* limitations.  In fact, there is an utter void in the record as to *any* physician assigning Perry limitations prior to her DLI. *See Anderson v. Sullivan*, 925 F.2d 220, 222 (7th Cir. 1991) (articulating that, while evidence of a claimant's condition during the post-insured period is relevant, the ALJ is entitled to give more weight to contemporaneous medical evidence than to medical opinions based on several years of hindsight); *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (emphasizing that a court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own

12

judgment for that of the Commissioner," rather its "task is limited to determining whether the ALJ's factual findings are supported by substantial evidence"). As a result, Perry gains no ground in discrediting Dr. Cox through her first argument.

Likewise, Perry's second contention – that Dr. Cox ignored Dr. Beyer's recommendation that Perry undergo a cardiology evaluation – is baseless. Dr. Cox *did* specifically reference the work-up that Dr. Beyer performed on Perry in October 1998 in which he recommended that she obtain a cardiology consultation. (*See* Tr. 401); *see generally Dixon*, 270 F.3d at 1176 (emphasizing that an ALJ "is not required to address every piece of evidence or testimony, but must provide some glimpse into her reasoning."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). Dr. Cox also considered the opinion of Perry's own family practitioner, who in October 1998 did not assign her any limitations or identify any cardiology concerns.

Furthermore, Dr. Beyer's recommendation that Perry undergo a cardiology consultation hardly constitutes evidence of a disabling cardiology impairment, as Dr. Beyer also recommended that Perry undergo an ophthalmology examination, which ultimately revealed that Perry had normal 20/20 vision. Curiously, in asserting this argument, Perry seems to turn a blind eye to the fact that *she* chose never to return to Dr. Beyer or obtain a timely cardiology evaluation, which certainly lends little support to her testimony concerning the severity of her symptoms as of her DLI. *See generally Caviness v. Apfel*, 4 F. Supp. 2d 813, 819-20 (S.D. Ind. 1998) (considering a claimant's failure to seek treatment as a factor when determining the credibility of her testimony of debilitating symptoms). Thus, as with her first contention, Perry's second attempt to discredit Dr. Cox falls short.

Finally, Perry's third argument – that Dr. Cox's testimony is defective because he

13

purportedly failed to consider Perry's testimony – is also unavailing.  The ALJ requested that Dr. Cox review Perry's *medical evidence* of record as of her DLI.  Here, Dr. Cox found the contemporaneous medical evidence sufficient to provide a legitimate medical basis upon which to contradict a finding of disability, making it unnecessary to explore other sources of documentation.  *See* SSR 83-20; *see generally Allord v. Barnhart*, 455 F.3d 818, 822 (7th Cir. 2006); *Anderson*, 925 F.2d at 222.  Furthermore, when questioned by the ALJ Dr. Cox did specifically address the testimony of Perry's daughter concerning Perry's purported pre-DLI symptoms.  Dr. Cox opined that if Perry had been experiencing significant symptoms prior to her DLI as her daughter portrayed, she would have been admitted to a hospital or at least undergone a full work-up at the time, yet she did not undergo a full work-up until four years *after* her DLI, lending little credence to Perry's daughter's testimony.

Moreover, the ALJ offered Perry's attorney an opportunity to question Perry after Dr. Cox's testimony "to supplement the information currently available," yet he declined to do so. (Tr. 402.)  The Court must presume that Perry, who was represented by counsel, presented her best case at the hearing. *See Sears v. Bowen*, 840 F.2d 394, 402 (7th Cir. 1988).  As a result, Perry's final attempt to discredit Dr. Cox's testimony fails to advance her cause.

In summary, none of the reasons Perry suggests to discredit Dr. Cox are convincing. Clearly, Dr. Cox's opinion that Perry became disabled *after* her DLI constitutes substantial evidence upon which the ALJ was entitled to rely in reaching her determination that Perry was not disabled as of her DLI.

### B.  The ALJ Satisfied Her Burden of Minimum Articulation

Perry also contends that the ALJ did "not support her decision with substantial evidence

14

that is explained with enough detail to permit meaningful review." (Opening Br. at 7.)  More specifically, Perry asserts that the ALJ failed to address certain issues concerning her symptoms; her daily activities; the duration, frequency, and intensity of her pain; the factors that precipitate or aggravate her symptoms; and her use of medication.  Contrary to Perry's contention, the ALJ has satisfied her burden of minimum articulation in denying Perry's claim for DIB benefits.

"The Secretary's decision must be based on consideration of all relevant evidence and the reason for his conclusion must be stated in a manner sufficient to permit an informed review." *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997).  "Furthermore, the Secretary may not select only that evidence that favors the ultimate conclusion, but rather 'must articulate at some minimum level his analysis of the evidence in cases in which considerable evidence is presented to counter the agency's position." *Id*. (internal quotation marks omitted); *see Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) ("An ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required.").  Essentially, "[a]ll we require is that the ALJ sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning." *Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996) (internal quotation marks omitted); *see also Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).  When reviewing an ALJ's decision, a court will "give the opinion a commonsensical reading rather than nitpicking at it." *Rice v. Barnhart*, 384 F. 3d 363, 369 (7th Cir. 2004).

Here, Perry asserts that the ALJ failed to carry her burden of minimum articulation in five specific areas.  First, while Perry acknowledges that the ALJ noted her alleged symptoms of chest pain, shortness of breath, and vomiting during the pre-DLI period, she contends that the

15

ALJ erred by failing to assign a "weight" to her symptoms and by failing to explain how her "symptoms relate to the medical impairments at issue." (Opening Br. at 7.) Next, Perry alleges that the ALJ did not properly consider her daily activities when she articulated that Perry purportedly "would stay in bed sometimes for days at a time" but that after her bypass surgery she was "up and out more," contending that the ALJ's reference to "just one activity, when there are many to be considered, provides a clear inference that the activities of daily living were not properly considered[.]" (Opening Br. at 8.) Finally, Perry asserts that the ALJ failed to sufficiently articulate her consideration of "the specific details about the duration, frequency, and intensity of [Perry's] pain and [Perry's] symptoms"; the "factors that precipitate and aggravate [her] symptoms";[11] and "the type, dosage, effectiveness, and side effects of any medication [Perry] takes or has taken to alleviate pain or other symptoms."[12] (Opening Br. at 8-9.)

In advancing this argument, however, Perry fails to point specifically to *any* countervailing evidence of record that the ALJ did not consider, perhaps because such evidence is scant.[13] *See Schmidt v. Barnhart*, 395 F.3d 737, 747 (7th Cir. 2005) (concluding that an ALJ's determination was supported by substantial evidence, where claimant's contentions to the contrary "did not point to any specific evidence contradicting the ALJ's conclusion"); *see*

---

[11] More specifically, Perry argues that the ALJ should have answered the following questions in her decision: "What factors? Which factors precipitate which symptoms? Which factors aggravate which symptoms? How do they precipitate? How do they aggravate? What are the consequences of the aggravation? What is the aggravation's relationship to pain? How is the aggravation limiting?" (Opening Br. at 8.)

[12] More specifically, Perry asserts that the ALJ should have answered the following questions in her opinion: "What medication, Which medication had which side effects? Which medications had no side effects? The Plaintiff had a long history of diabetes and hypertension. Certainly she was on some medications. Where is the discussion of these medications?" (Opening Br. at 9.)

[13] Perry never argues that the ALJ did not have sufficient evidence upon which to make a decision. *See*, *e.g.*, 20 C.F.R.§ 404.1527(c)(3). Rather, she contends that the "medical evidence is extensive" in support of her position. (Opening Br. at 9.)

16

*generally Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994) ("Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand."). For example, Perry has failed to produce a single physician's opinion, not even that of her own family practitioner, assigning her limitations during the pre-DLI period. *See generally Scott v. Sullivan*, 898 F.2d 519, 523 (7th Cir. 1990) ("Given our often-repeated observation that treating physicians may occasionally go the extra step in helping their patients obtain benefits for a medical condition, the refusal of either of [the claimant's] treating physicians directly to substantiate [the claimant's] claim . . . further supports the ALJ's determination that [the claimant] was not eligible for disability benefits." (internal citations and quotation marks omitted)). And although she faults the ALJ for her failure to discuss specific details about the duration, frequency, and intensity of her purported pain and symptoms, Perry never mentioned at either of her hearings that she experienced pain, nor does she direct the Court to any medical evidence that offers specific details concerning any purported pain.

Rather, it is seemingly apparent that Perry is simply attempting to characterize her own failure to carry her burden of producing evidence of pre-DLI disability as a failure by the ALJ to articulate and analyze the evidence of record. *See Scheck v. Barnhart*, 357 F.3d 697, 702 ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."). The Court is not persuaded by this characterization, as Perry, who was represented by counsel, was given an opportunity at both hearings to present testimony and submit evidence to support her claim of pre-DLI disability. (Tr. 387, 402); *see Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."). As a

17

result, she is presumed to have presented her best case, *Sears*, 840 F.2d at 402, which in this instance is insufficient to support a finding of disability prior to her DLI.

In summary, the ALJ's conclusion that Perry was not disabled prior to her DLI is supported by substantial evidence and is sufficiently articulated. *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) ("If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough.").  Thus, Perry's request for a remand on this basis will be denied.

## VI.  CONCLUSION

For the reasons stated herein, the ALJ's finding that Perry was not disabled, and thus not entitled to DIB payments, is supported by substantial evidence.  Therefore, the decision of the Commissioner is hereby AFFIRMED.  The Clerk is directed to enter a judgment in favor of the Commissioner and against Perry.

SO ORDERED.

Enter for this 30th day of October, 2006.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge
